UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
FILED
CHARLOTTE, NC
JUN 17 2025
US DISTRICT COURT
WESTERN DISTRICT OF NC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. **3:25-cr-149-KDB** |
| | ) | **BILL OF INDICTMENT** |
| v. | ) | Violations: |
| | ) | 18 U.S.C. § 1349 |
| | ) | 18 U.S.C. § 1028A |
| CHARLES VINES | ) | 18 U.S.C. § 1956(a)(1)(B)(i) |

**THE GRAND JURY CHARGES:**

At the specified times and at all relevant times:

### INTRODUCTION

1.  From no later than September 2023 through at least May 2024, the defendant, CHARLES VINES ("VINES"), along with others known and unknown to the Grand Jury, engaged in a fraud conspiracy involving the cashing of stolen checks at financial institutions. During the conspiracy, VINES and his co-conspirators obtained checks, including U.S. Treasury checks, stolen from the U.S. mail. VINES and his co-conspirators then manufactured fictitious forms of identification in the names of victims to whom the stolen checks were made payable. VINES then used the fictitious forms of identification to fraudulently open bank accounts to deposit the stolen checks and withdraw the funds. The conspiracy involved more than a dozen checks with a combined face value of several million dollars.

### BACKGROUND

2.  VINES was a resident of Brooklyn, New York, who, in furtherance of the conspiracy, travelled through many states, including the Western District of North Carolina.

3.  Truist Bank, TD Bank, US Bank, JPMorgan Chase, Minnwest Bank, United Bank, and Old National Bank were financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation ("Victim Financial Institutions").

### THE CONSPIRACY

4.  VINES conspired with others known and unknown to the Grand Jury to operate a fraud scheme to obtain money under the custody and control of various financial institutions, including the Victim Financial Institutions, through false and fraudulent pretenses and representations. VINES and his co-conspirators carried out the conspiracy in the Western District of North Carolina and elsewhere.

5. As part of the conspiracy, VINES and his co-conspirators generally operated as follows:

   a. VINES and his co-conspirators obtained checks, including U.S. Treasury checks, stolen from the U.S. mail.

   b. VINES and his co-conspirators created fictitious forms of identification in the names of victims to whom the stolen checks were made payable but with a photograph of VINES. VINES then used the fictitious identifications to fraudulently open bank accounts at the Victim Financial Institutions.

   c. VINES then deposited the stolen checks into the bank accounts at the Victim Financial Institutions.

   d. If the Victim Financial Institutions credited the bank accounts with funds from the stolen checks, VINES and his co-conspirators withdrew the proceeds in various ways before the Victim Financial Institutions discovered the fraud.

6. As part of the conspiracy, on or about January 23, 2024, VINES visited a Truist Bank Branch in Charlotte, North Carolina, and fraudulently opened a bank account in the name of Victim Business 1 ("Truist Account x3262") and forged the signature of Victim R.K on the bank account signature card. On or about January 24, 2024, VINES deposited a check in the amount of $97,552.87 made payable to Victim Business 1 into Truist Account x3262.

7. As part of the conspiracy, on or about February 9, 2024, VINES visited a Truist Bank Branch in Charlotte, North Carolina, and fraudulently opened a bank account in the name of Victim Business 2 ("Truist Account x8486") and forged the signature of Victim A.F. on the bank account signature card. On or about February 12, 2024, VINES deposited a check in the amount of $396,601.38 made payable to Victim Business 2 into Truist Account x8486.

8. As part of the conspiracy, on or about February 10, 2024, VINES visited a Truist Bank Branch in Charlotte, North Carolina, and fraudulently opened a bank account in the name of Victim Business 3 ("Truist Account x6647") and forged the signature of Victim R.H. on the bank account signature card. On or about February 15, 2024, VINES deposited a check in the amount of $158,384.00 made payable to Victim Business 3 into Truist Account x6647. Over the next three weeks, VINES made several withdrawals from Truist Account x6647 totaling more than $115,000. On or about February 29, 2024, and March 2, 2024, VINES used the proceeds of these withdrawals to purchase Official Bank Checks made payable to "Charles Vines," which he subsequently cashed at a Truist Bank branch in Charlotte, North Carolina.

9. As part of the conspiracy, on or about February 23, 2024, VINES visited a Truist Bank Branch in Charlotte, North Carolina, and fraudulently opened a second bank account in the name of Victim Business 3 ("Truist Account x5233") and forged the signature of Victim R.H. on the bank account signature card. On or about February 26, 2024, VINES deposited a check in the amount of $1,296,000.00 made payable to Victim Business 3 into Truist Account x5233.

10. As part of the conspiracy, on or about March 1, 2024, VINES visited a Truist Bank Branch in Cornelius, North Carolina, and fraudulently opened a bank account in the name of Victim Business 4 ("Truist Account x0679") and forged the signature of Victim K.D. on the bank account signature card. On or about March 4, 2024, VINES deposited a check in the amount of $47,775.00 made payable to Victim Business 4 into Truist Account x0679. On or about March 15, 2024, VINES withdrew more than $26,500 from Truist Account x0679, and used $20,500 of the proceeds to purchase Official Bank Checks made payable to "Charles Vines." VINES subsequently cashed two of those Official Bank Checks totaling $14,500 at a Truist Bank branch in North Carolina.

11. As part of the conspiracy, on or about March 18, 2024, VINES visited a United Bank Branch in Charlotte, North Carolina, and fraudulently opened a bank account in the name of Victim Business 5 ("United Bank Account x5913") and forged the signature of Victim K.M. on the bank account signature card. On or about that same day, VINES deposited a check in the amount of $20,083.00 made payable to Victim Business 5 into United Bank Account x5913. Over the next two weeks, VINES made two withdrawals from United Bank Account x5913 totaling $20,000. On or about March 27, 2024, VINES wired $25,000 into the account from an account he fraudulently opened in the name of Victim J.S. at U.S. Bank (discussed below). That same day, VINES made two withdrawals from United Bank Account x5913 totaling $25,000.

12. As part of the conspiracy, on or about March 22, 2024, VINES visited a U.S. Bank Branch in Huntersville, North Carolina, and fraudulently opened a bank account in the name of Victim J.S. ("U.S. Bank Account x5037") and forged the signature of Victim J.S. on the bank account signature card. On or about March 23, 2024, VINES deposited a U.S. Treasury check in the amount of $82,466.00 made payable to Victim J.S. into U.S. Bank Account x5037. Over the next week, VINES made several withdrawals and one wire from United Bank Account x5037 totaling more than $80,000. On or about March 26, 2024, March 28, 2024, and March 29, 2024, VINES used the proceeds of these withdrawals to purchase Official Bank Checks made payable to "Charles Vines," which he subsequently cashed at U.S. Bank branches in Charlotte, North Carolina.

3

## COUNT ONE
## 18 U.S.C. § 1349
(Conspiracy to Commit Financial Institution Fraud)

13. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 12 of the Bill of Indictment, and further alleges that:

14. From no later than September 2023 through at least May 2024, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

**CHARLES VINES**

did knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit financial institution fraud, in violation of Title 18, United States Code, Section 1344(2).

### Object of the Conspiracy

15. It was the object of the conspiracy that VINES, and others known and unknown to the Grand Jury, would and did devise and execute a scheme to obtain moneys owned by, and in the custody or control of, one or more financial institutions, whose deposits were insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent representations and promises.

### Manner and Means

16. VINES, and others known and unknown to the Grand Jury, carried out the conspiracy in the manner and means described in paragraphs 4 through 12 of this Bill of Indictment, among others.

All in violation of Title 18, United States Code, Section 1349.

4

## COUNTS TWO THROUGH SEVEN
## 18 U.S.C. § 1028A
### (Aggravated Identity Theft)

17. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 12 of the Bill of Indictment, and further alleges that:

18. On or about the dates set forth below, each such date constituting a separate count, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

## CHARLES VINES

aided and abetted by others known and unknown to the Grand Jury, did knowingly transfer, possess, and use, and attempt to transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, the names and PII of the victims listed in each of Counts Two through Seven below, during and in relation to felony violations of Title 18, United States Code, Sections 1343 and 1344, knowing that the means of identification belonged to another actual person, as described in the chart below:

| Count | Approximate Date | Victim | Location |
|---|---|---|---|
| TWO | January 23, 2024 | R.K. | Charlotte, North Carolina |
| THREE | February 9, 2024 – February 12, 2024 | A.F. | Charlotte, North Carolina |
| FOUR | February 10, 2024 – March 5, 2024 | R.H. | Charlotte, North Carolina |
| FIVE | March 1, 2024 – March 15, 2024 | K.D. | Cornelius, North Carolina |
| SIX | March 18, 2024 – March 27, 2024 | K.M. | Charlotte, North Carolina |
| SEVEN | March 22, 2024 – March 29, 2024 | J.S. | Huntersville, North Carolina |

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT EIGHT
18 U.S.C. § 1956(a)(1)(B)(i)
(Concealment Money Laundering)

19. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 12 of the Bill of Indictment, and further alleges that:

20. On or about March 27, 2024, in the Western District of North Carolina and elsewhere, the defendant,

**CHARLES VINES**

did knowingly conduct and attempt to conduct the financial transaction affecting interstate commerce described below, which transaction involved the proceeds of specified unlawful activity, that is, financial institution fraud, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Transaction |
| --- |
| $25,000 wire transaction from U.S. Bank Account x5037 to United Bank Account x5913 and subsequent withdrawals of $15,000 and $10,000 from United Bank Account x5913 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

6

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a. All property which constitutes or is derived from proceeds of the offenses set forth in Counts One and Eight set forth in this Bill of Indictment;

    b. All property involved in the offenses set forth in Count Eight set forth in this Bill of Indictment; and

    c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a) and (b).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds set forth above: a forfeiture money judgment in the amount of at least $217,000, such amount constituting the proceeds of the offenses set forth herein.

A TRUE BILL:

FOREPERSON

RUSS FERGUSON
UNITED STATES ATTORNEY

DANIEL RYAN
ASSISTANT UNITED STATES ATTORNEY

7